UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-cr-60211-LEIBOWITZ

**UNITED STATES OF AMERICA**,

    *Plaintiff*,

v.

**JEFFRY ARISTA**, *et al.*,

    *Defendants*.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants Jeffry Arista and Jonathan Arista's (collectively, the "Arista Defendants") Joint Motion for Severance (the "Motion") [ECF No. 75], filed on January 31, 2025. The Government filed a response in opposition (the "Response") [ECF No. 79], to which Defendants filed a reply (the "Reply") [ECF No. 80]. After careful consideration of the Motion, the record, and the relevant authorities, the Motion [**ECF No. 75**] is **DENIED**.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

As charged in the Indictment, Defendants were involved in a conspiracy to kidnap an individual (the "Targeted Individual") to collect money. [ECF No. 23 at 1–2]. On October 13, 2023, Defendant Jonathan Arista, wearing a mask and brandishing a firearm, forced one individual (the "Victim") into a vehicle driven by Defendant Raymond Gomez ("Defendant Gomez"). [*Id.* at 2 ¶ 2]. Once in the vehicle, Defendants Jonathan Arista and Gomez covered the Victim's head with a black hood. [*Id.*]. Then, they transported the Victim against his will to a residence in Plantation, Florida. [*Id.* ¶ 3].

Defendant Jeffry Arista was already present at the Plantation residence when Defendants Jonathan Arista and Gomez arrived. [*Id.*]. Upon their arrival, Defendants removed the hood from the Victim's head, checked his identification, and learned that he was not the Targeted Individual.

[*Id.* ¶ 4]. However, Defendants continued to keep and hold the Victim against his will. [*Id.* ¶ 5]. They zip-tied the Victim's hands to a chair, waterboarded him, and threatened him with firearms, a taser, and an electric drill. [*Id.* at 3 ¶ 6].

Defendants then proceeded to access the Victim's iCloud account and obtained the Targeted Individual's contact information. [*Id.* ¶ 7]. Then, while impersonating the Victim, Defendants texted the Targeted Individual to learn his whereabouts. [*See id.* ¶¶ 7–8]. Upon learning the Targeted Individual was located at a certain business in Pompano Beach, Florida, Defendants drove the Victim to that location. [*Id.* ¶ 8]. After arriving at the location, Defendants provided the Victim with a cellphone and ordered the Victim to enter the establishment and lure the Targeted Individual outside. [*Id.* ¶ 9]. The Victim foiled the plot by notifying the police while inside the establishment, and Defendants were subsequently arrested and charged. [*See generally id.*].

On October 26, 2023, a federal grand jury empaneled in this District returned a four-count indictment. [*Id.*]. The Indictment charged all Defendants with three counts: (1) conspiracy to kidnap in violation of 18 U.S.C. § 1201(c); (2) kidnapping in violation of 18 U.S.C. §§ 2, 1201(a); and (3) attempted kidnapping in violation of 18 U.S.C. §§ 2, 1201(a), (d). [ECF No. 23 at 1–4]. Defendant Jeffry Arista is also separately charged with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [ECF No. 23 at 4].

On December 14, 2024, the Government filed a memorandum in support of introducing non-testifying Defendant Gomez's post-*Miranda* interview in its case-in-chief. [ECF No. 72]. The Government attached three exhibits to this memorandum: (1) an unredacted copy of Defendant Gomez's interview; (2) a redlined copy of Defendant Gomez's interview with proposed redactions; and (3) a copy of Defendant Gomez's interview with proposed redactions blacked out. [ECF Nos. 72-1, 72-2, 72-3]. The Arista Defendants then filed the instant Motion, arguing that the statements

from the interview directly implicate and incriminate the Arista Defendants and are, therefore, a violation of the Sixth Amendment's Confrontation Clause.  [ECF No. 75 ¶¶ 22–23].

## II.     LEGAL STANDARD

Rule 8 of the Federal Rules of Criminal Procedure provides that an "indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately." Fed. R. Crim. P. 8(b). "Rule 8 is construed broadly in favor of initial joinder." *United States v. Souffrant*, 517 F. App'x 803, 810 (11th Cir. 2013) (citing *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002)). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Id.* at 811 (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).

Although Rule 8 "does not require that each defendant be charged with each act in the series, there must be a logical relationship between each of the defendants joined." *Id.* (citing *United States v. Saget*, 991 F.2d 702, 707 (11th Cir. 1993)).  If the allegations in the Indictment state that the defendants participated "in the same series of acts or transactions[,]" that is sufficient.  *Id.* (citing *United States v. LaSpesa*, 956 F.2d 1027, 1032 (11th Cir. 1992)).  The word "transaction" is interpreted liberally; "[i]t may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976)[1] (collecting cases).

The Eleventh Circuit defaults in favor of joinder because "[j]oint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase

---

[1] All decisions handed down by the Fifth Circuit prior to September 30, 1981, are binding authority for this Court.  *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

3

efficiency, and conserve scarce judicial resources. *United States v. Lopez*, 649 F.3d 1222, 1233–34 (11th Cir. 2011) (collecting cases). This general rule "is particularly applicable to conspiracy cases." *United States v. Cassano*, 132 F.3d 646, 651 (11th Cir. 1998) (citations and footnote omitted).

However, under Rule 14 of the Federal Rules of Criminal Procedure, the defendant may earn severance by showing that, while "initial joinder under Rule 8(b) is technically proper . . . prejudice will result if two or more defendants are tried in a joint trial." *United States v. Morales*, 868 F.2d 1562, 1570 (11th Cir. 1989). Rule 14 provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). A defendant seeking severance under Rule 14 carries a "heavy burden of demonstrating [that] compelling prejudice" would result from a joint trial. *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007) (cleaned up). Ordinary prejudice will not do; rather, "a defendant must establish that a joint trial would actually prejudice the defendant and that a severance is the only proper remedy for that prejudice—jury instructions or some other remedy short of severance will not work." *Lopez*, 649 F.3d at 1234 (first citing *Zafiro*, 506 U.S. at 539–41; then citing *United States v. Blankenship*, 382 F.3d 1110, 1122–23 (11th Cir. 2004)). Severance should only be granted if a joint trial would "compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," even with limiting instructions. *Zafiro*, 506 U.S. at 539. When determining whether to sever, a district court "must balance the right of the defendant to a fair trial against the public's interest in the efficient and economic administration of justice." *United States v. Simon*, 839 F.2d 1461, 1472 (11th Cir. 1988) (citations omitted).

### III. LEGAL ANALYSIS

The Court first determines whether initial joinder was proper under Rule 8. Because initial joinder was proper, the Court turns to the second inquiry of whether severance is proper under Rule 14. Here, severance is unwarranted and, therefore, the Court will deny the Motion.

### A. Rule 8 – Initial Joinder

The Court finds that Defendants were all properly joined. The Court reviews only the face of the indictment to determine whether joinder is proper, *see Morales*, 868 F.2d at 1567–68, and the Government bears the burden in showing that initial joinder is appropriate under Rule 8. *See United States v. Montes-Cardenas*, 746 F.2d 771, 776 (11th Cir. 1984). That burden has been easily met here because the indictment charges all Defendants for participation in a single conspiracy to kidnap the Targeted Individual. [ECF No. 23 at 1–3]. This provides the "common thread" sufficient to warrant a finding of proper joinder. *Saget*, 991 F.2d at 707. And because the Arista Defendants failed "to assert any specific argument that [their] initial joinder with the co-defendants in this case was improper[,]" *United States v. Denmark*, No. 05-cr-71FTM33DNF, 2005 WL 2755987, at *2 (M.D. Fla. Oct. 25, 2005), the Court finds that the Government has met its burden for purposes of Rule 8.

### B. Rule 14 - Severance

Since initial joinder is proper, the Court must determine whether Rule 14 compels severance in this case. The answer is no.

The Arista Defendants have failed to satisfy their exacting burden of showing "compelling prejudice." *Browne*, 505 F.3d at 1268. The Arista Defendants contend that the post-*Miranda* statements of Defendant Gomez implicate and incriminate them. [ECF No. 75 ¶ 22]. Relying on the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny, the Arista Defendants argue that a joint trial with these statements would violate their Sixth Amendment rights. [ECF No. 75 ¶¶ 22–23].

The Court in *Bruton* held that a nontestifying codefendant's extrajudicial statements that incriminate a criminal defendant in a joint trial violate the defendant's right to cross-examination under the Confrontation Clause of the Sixth Amendment, even with a limiting instruction to the jury to consider the statements only against the codefendant. 391 U.S. at 126, 137. But the "Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). *Richardson*'s limitation on the *Bruton* rule, however, does not apply when the statements are "redacted in such a away that . . . facially incriminates a defendant[.]" *United States v. Vernet*, 681 F. App'x 765, 769 (11th Cir. 2017); *see also Gray v. Maryland*, 523 U.S. 185, 196–97 (1998) (holding that redacted confessions substituting the defendant's name with symbols, blanks, or the word "delete" falls within the ambit of *Bruton*). The Supreme Court recently revisited *Bruton* in *Samia v. United States*, 599 U.S. 635 (2023), where the Court clarified that redacted confessions containing "the neutral references to some 'other person' were not akin to an obvious blank or the word 'deleted.'" *Id.* at 653 (distinguishing *Gray*, 523 U.S. at 196).

After careful review of the Government's proposed redactions, the Court finds that the *Bruton* rule does not require severance here. The Arista Defendants' arguments are plainly foreclosed by the Supreme Court's holding in *Samia*. Specifically, the references to the Arista Defendants in the proposed redactions of Defendant Gomez's post-*Miranda* interview are replaced by "other people" and similar neutral terms. [*See generally* ECF Nos. 72-2, 72-3]. These references do not rise to the point of "facially incriminating" the Arista Defendants. *Richardson*, 481 U.S. at 207.

The Arista Defendants submit that the admission of the redacted version of Defendant Gomez's post-*Miranda* interview at trial would violate their Sixth Amendment rights because it

6

directly implicates the Arista Defendants as the interview transcript "keeps referring to only two individuals who participated along with Gomez during the entire alleged criminal episode." [ECF No. 80 ¶ 6]. This redacted transcript, according to the Arista Defendants, facially incriminates them and is the kind prohibited by *Gray*. [*Id.* ¶¶ 7–10].

*Gray* concerned a redacted confession that incriminated the defendants in a joint murder case. *Gray*, 523 U.S. at 188. The State had redacted the confession of a codefendant by replacing the nonconfessing defendants' names with the word "deleted" or a blank space set off by commas. *Id.* at 192. The police detective who read the redacted confession into evidence said either "deleted" or "deletion" whenever the nonconfessing defendants' names appeared. *Id.* at 188. Immediately after the police detective read this redacted confession to the jury, the prosecutor asked the detective if he was able to arrest Mr. Gray after the nontestifying codefendant gave that confession. *Id.* at 188–89. The police detective answered in the affirmative. *Id.* at 189.

*Gray* is distinguishable. First, the posture of that case and the instant case are different. The police detective in *Gray* testified that he arrested Mr. Gray upon receiving the codefendant's confession *immediately after* reading the redacted confession into evidence. 523 U.S. at 188–89. The redactions were insufficient since this follow up testimony from the police detective "eliminated all doubt" that the confession was referring to Mr. Gray. *Id.* at 194. Here, however, it would be premature to sever the Arista Defendants without knowing the sequence of the Government's case-in-chief and how it plans to introduce Defendant Gomez's post-*Miranda* interview.

Second, the redactions in *Gray* that plainly implicated the defendant are unlike the redactions proposed by the Government in this case. The *Gray* Court viewed favorably redacted statements that do not make clear which person the statements refer to, such as statements that indicate "there are more participants than the confession has named." *Id.* at 195. In this case, Defendant Gomez's post-*Miranda* interview contains redactions referring to "other people" or "they" and mentions other

7

unindicted individuals that appear throughout the charged criminal episode. [*See, e.g.*, ECF No. 72-3 at 18, 20, 31, 43–44]. The Arista Defendants claim that during the interview law enforcement merely insisted on Defendant Gomez describing their actions and implicating solely them. [ECF No. 80 ¶ 12]. But the Arista Defendants ignore that law enforcement asked Defendant Gomez questions concerning an unindicted coconspirator—referred to as the "scary dude" or "scary guy"—and also elicited statements to pinpoint the "mastermind" of the alleged conspiracy. [ECF No. 72-3 at 23–24, 40–41, 44–45]. The law enforcement officers interviewing Defendant Gomez were simply trying to uncover the sequence of events because Defendant Gomez was giving unclear and incomplete testimony. The Government is not precluded from presenting this evidence to the jury, as it bears the burden to prove that the charged conspiracy occurred. *See Vernet*, 681 F. App'x at 770 (affirming district court's denial of severance where the government used the redacted statement for "facts it intended to prove" in a case where the evidence showed that the defendants "were not the only members of the conspiracy"). The statements embedded in the transcript "become incriminating only when linked with evidence introduced later at trial." *Samia*, 599 U.S. at 653 (alterations adopted) (quoting *Gray*, 523 U.S. at 194).

Because the redacted transcript does not directly identify the Arista Defendants, there is no conceivable Sixth Amendment violation, and the Court will provide limiting instructions at trial that the transcript shall not be considered with respect to the Arista Defendants. *See Samia*, 599 U.S. at 640, 655 (holding no Confrontation Clause violation where a nontestifying codefendant's confession that does not directly implicate the defendant is accompanied by a proper limiting instruction).

However, the Arista Defendants' Reply states in a footnote that the Government "failed to redact all of the references to the nicknames" of the Arista Defendants. [ECF No. 80 ¶ 7 n.1]. The Court agrees with the Arista Defendants on this score. While this does not justify severing trial, the Government shall file an amended redacted transcript that remedies any insufficiencies.

8

In attempt to further justify severance apart from *Bruton*, the Arista Defendants heavily rely on *Blankenship*. [ECF No. 75 ¶¶ 19, 25; ECF No. 80 ¶¶ 15–16]. *Blankenship*—an Eleventh Circuit decision that *affirmed* the district court's denial of severance—held that "where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant[,]" severance is mandated particularly when "gruesome evidence against one defendant overwhelms the *de minimus* evidence against the co-defendant(s)."  382 F.3d at 1123 (citations omitted).  The Government responds that *Blankenship* is inapposite precisely because there is significant evidence against each of the Arista Defendants.  [ECF No. 79 at 13].  The Court agrees.

The Arista Defendants do not contest the litany of evidence against each of them that the Government intends to put forth at trial.  [*See* ECF No. 80 ¶¶ 15–16].  Nor do the Arista Defendants argue that any of this evidence is inadmissible against them.  This evidence is a far cry from a "*de minimus*" nature, which the Government seeks to introduce to meet its burden against all Defendants involved in the charged scheme.  Indeed, as it was in *Blankenship* where "the entire case concerned the parties' alleged criminal acts . . . being carried out at roughly the same time[,]" all Defendants here "are alleged to have conspired with each other, and the numerous charges concern essentially related courses of criminal conduct . . . ."  382 F.3d at 1126.  Thus, it cannot be said that the "jury will be unable, due to the complex nature of the evidence, to make a reliable determination of guilt for each defendant."  *United States v. Oscar*, 877 F.3d 1270, 1290 (11th Cir. 2017).

In sum, the Arista Defendants have failed to meet their burden in showing "compelling prejudice" to warrant severance.  The Court heeds the Supreme Court and the Eleventh Circuit's preference for joint trials.  *Zafiro*, 506 U.S. at 537; *Lopez*, 649 F.3d at 1233–34.  The Government will need to try the case only once, and the Court will preside over one rather than two trials.  *See United States v. Machado*, 804 F.2d 1537, 1544 (11th Cir. 1986) ("The minimal prejudice to [the defendants] was outweighed by considerations of judicial administration and economy in this circumstance.").

9

## IV. CONCLUSION

Accordingly, upon due consideration, it is hereby **ORDERED AND ADJUDGED** that the Arista Defendants' Joint Motion for Severance [**ECF No. 75**] is **DENIED**. Additionally, the Government shall file amended redactions that satisfy *Samia* and are consistent with this Order **no later than the next scheduled pretrial conference.**

**DONE AND ORDERED** in the Southern District of Florida on September 15, 2025.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record